UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JASMINE ALLEN,

v.   Case No. 3:06-cr-289-J-33MCR
    3:10-cv-1046-J-33MCR

UNITED STATES OF AMERICA.
_____

## O R D E R

This cause is before the Court on Defendant's timely-filed motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. Cv-1; Cr-222). The Government responded to the motion to vacate (Doc. Cv-6). Although Allen was allotted time in which to file a reply, she did not do so.

A review of the record demonstrates that, for the following reasons, the motion to vacate must be **denied.**

### PROCEDURAL HISTORY

On May 23, 2007, Jasmine Allen was named in three counts of a six-count Superseding Indictment. (Doc. Cr-56). Specifically, Allen was charged with conspiracy to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count One); managing and controlling a residence for the purpose of unlawfully manufacturing, storing and distributing cocaine base, in violation of Title 21 U.S.C. §§ 856(a)(2) and (b) (Count Two); aiding and abetting in the distribution of five or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count

Four). On March 6, 2008, after a jury trial, Allen was convicted of all three counts in which she was charged. (Doc. Cr-165). On November 5, 2008, Allen was sentenced to two-hundred- thirty-five months incarceration. (Doc. Cr-185).

On November 10, 2008, Allen filed a timely notice of appeal, specifically challenging her guidelines sentence. Allen claimed that the Court imposed a sentence that was substantively unreasonable and not reflective of her minimal involvement in the offense. On November 20, 2009, the Eleventh Circuit Court of Appeals rejected her claims and affirmed her sentence. (Doc. Cr-217 at 12-14).

On November 12, 2010, Allen filed the pending 28 U.S.C. § 2255 motion to vacate and memorandum in support of the motion. (Docs. Cv-1, 2; Cr-222,223).

**DISCUSSION**

Title 28 U.S.C. § 2255 allows attack on a conviction and sentence on four grounds: (1) it was imposed in violation of the Constitution or laws of the United States; (2) it was imposed without jurisdiction; (3) it was imposed in excess of the maximum authorized by law; or (4) it is otherwise subject to collateral attack. Only jurisdictional claims, constitutional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice warrant relief on collateral attack. *E.g., United States v. Addonizio,* 442 U.S. 178, 184-86 (1979).

In the present motion to vacate, Allen seeks review of her conviction, claiming that she was denied her Sixth Amendment right to effective assistance of counsel. Ineffective assistance of counsel claims are generally reviewable only on collateral attack pursuant to 28 U.S.C. § 2255. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). Claims of ineffective assistance excuse failure to raise other claims if ineffective assistance of

counsel is the cause for the failure to raise the claim. *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).

### **Ineffective Assistance of Counsel - Generally**

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a

petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

### SPECIFIC CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Allen claims that her former counsel was constitutionally ineffective for (1) failing to advise Allen of a plea offer; (2) failing to advise Allen that she was eligible for the safety valve; and, (3) failing to challenge the weight and type of drugs for which she was convicted. These claims are negated by the record.

### Grounds One and Two

Allen claims that counsel was ineffective for failing to advise of or discuss a plea offer that was extended by the government prior to trial, a plea that could have resulted in a much lesser sentence. She also claims that counsel was ineffective for filing to notify "his client of her eligibility for a safety-valve reduction." (Doc. Cv-2 -- Allen's Memorandum at 3).

Allen claims that she was encouraged by her co-defendant and boyfriend, Rodney Smith, to accept any plea offer of ten years or less in prison, and now asserts that she

4

certainly would have accepted any such offer. This claim is negated by the fact that throughout trial and thereafter, Allen asserted her innocence.

Allen did not testify. However, Allen's mother testified in Allen's defense, explaining to the jury that government witness Corey Steward was Allen's previous boyfriend and the father of one of Allen's children. Allen's mother testified that Steward and Allen did not have a good relationship, suggesting his testimony was biased against Allen. Allen's mother testified that she had heard tape-recorded conversations that the government introduced into evidence, but did not recognize her daughter's voice in those conversations. Allen's mother also testified that despite the fact that co-defendant Rodney Leon Smith was also the father of one of Allen's children, Smith did not live with Allen. (Doc. Cr-199 [Transcript of Trial for Date of March 5, 2008] at 224-238).

Subsequently, during the preparation of the Pre-sentence Investigation Report (PSR), despite *overwhelming* evidence at trial, including testimony regarding Allen's selling cocaine that was "cooked" and sold to an undercover officer at her residence (see Doc. Cr-199 at 68, 70-72, 76, 112, 184-186), Allen "maintained her innocence and [did] not accept[] responsibility for her behavior." PSR at ¶21.

During the sentencing hearing, Allen's sister told the Court that Allen was innocent and that the government witnesses "lied against her." (Doc. Cr-203 [Sentencing Transcript] at 42). Despite Allen's arguments to the contrary, the record is **not silent** with respect to attempts to convince Allen to accept a plea offer:

MR. DUVA: Yes, ma'am, just briefly. This is a - - there's no doubt this is a difficult situation. And we foresaw this coming down the pike this way, and that is why, and without any intention of - - to inject the Court into Rule 11 plea negotiations, we tried

5

|  |  |
|---|---|
|  | desperately, desperately, to fashion a plea for Ms. Allen. Don Pashayan tried; Ms. Savell and I tried. Ms. Allen is unwilling to even do her safety valve proffer. |
| THE COURT: | She has three little girls and no, really, criminal history - - |
| MR. DUVA: | That's true. |
| THE COURT: | -- to speak of. So she could have taken advantage of that safety valve and – |
| MR. DUVA: | The agents came up last week and we attempted. Ms. Allen came down from Irwin County and Mr. Fletcher came over, and I had every intention and did give her every opportunity to do it. And I understand her position, although 12 individuals have unanimously found to the contrary, when they executed the search warrant there was cocaine residue in her pots and pans. The undercover officer, Toby Williams, said it was Jasmine Allen that gave me the chip bag with the crack cocaine in it on June 8th of 2006. |
|  | If the jury was going to convict her on any count, we knew that it was going to be a level 38 on the relevant conduct. Mr. Fletcher and I again tried, on the Friday before trial, had a whole presentation set up for Ms. Allen to come in. And I knew this was where we were going to be, if she was convicted on one count. I didn't know if the jury was going to convict her of everything, but I felt like they were going to convict her of something, and they ended up convicting her on everything. |
|  | - - - - - - - - - - - - - - - |
|  | And so we just knew this was the situation we were going to be in. The government gave Ms. Allen - - and Mr. Fletcher gave her every opportunity. She just wouldn't take it. I'll never understand it as long as I'm a prosecutor, as |

6

> long as I'm with this office, I'll never get this case, I really won't. It is tragic. However, Ms. Allen leaves us with no choice but to ask for 235 months.

(Doc. Cr-203 at 44-47).

Given the opportunity to address the Court herself, Allen denied that she had seen her co-defendant cooking crack in her house; she insisted she never saw it. Id. at 47. All of the testimony at trial and sentencing and the presentation at sentencing indicates that Allen had clear opportunities to admit wrongdoing and engage in plea discussions. Allen simply refused to do so. This position is contrary to her current claim that, for the right deal, she would have entered a guilty plea. Additionally, this record corroborates the statements in counsel's response to an inquiry by the Florida Bar Association, and further negates Allen's claims that his statements therein were false. (See Doc. Cv-2 [Letter attached to Allen's Memorandum]).

The record clearly establishes that Allen was the driving force behind the strategy leading her to trial, and that she knowingly rejected any opportunity to even marginally admit her complicity in the crimes for which she was convicted in order to take advantage of relief under the safety valve -- relief which she knew was available to her. Her attempts to fault counsel are belied by the record.

Grounds one and two do not warrant relief.

**Ground Three**

Allen faults counsel for his alleged failure to challenge the type of drug and the weight of drugs for which she was convicted and sentenced. This claim, similar to the claims addressed above, is contrary to Allen's steadfast assertions of innocence. It

appears that she now wishes to change course, but she may not fault counsel for a failed choice, a strategy that the record demonstrates was Allen's alone. Moreover, the evidence at trial (and the jury's verdict) was sufficient for the Probation Office to determine that Smith distributed in excess of 11 kilograms of crack cocaine, most of which originated in Allen's apartment. The drug amounts in the case were properly scored as a Level 38.

Ground three does not warrant relief.

## NO EVIDENTIARY HEARING NECESSARY

Allen has not established any basis for an evidentiary hearing because the substance of her claims are negated by the record. As established herein, and by the appellate briefs (See Attachments to Doc. Cv-6), no further evidentiary development is needed for this Court to resolve the grounds Allen raised.

Allen's motion to vacate fails to establish that she was denied her Sixth Amendment right to effective assistance of counsel. To the contrary, and as discussed in this Order, the record reflects that at every stage of this case, counsel provided competent representation.

Accordingly, the Court orders:

That Allen's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc. Cv-1; Cr-222) is denied.  The Clerk is directed to enter judgment against Allen and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must

first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, she is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 29, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

AUSA: Andrew Tysen Duva
Jasmine Allen